# EXHIBIT A

**GLOBAL LEGAL LAW FIRM**
James C. Huber, Esq. (SBN 269488)
jhuber@attorneygl.com
380 Stevens Avenue, Suite 311
Solana Beach, CA 92075
Telephone: (888) 846-8901
Facsimile: (888) 846-8902

Attorneys for Plaintiff
U.S. Alliance Group, Inc.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**

North   K.T.

| | |
|---|---|
| U.S. ALLIANCE GROUP, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> NCR CORPORATION, a Delaware corporation; and DOES 1 − 25 inclusive, jointly and severally, <br><br> Defendant. | Assigned for All Purposes <br> Judge Craig Griffin <br><br> Case No. 30-2022-01253017-CU-BT-NJC <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **Intentional Interference Prospective Economic Relationships** <br> 2. **Negligent Interference with Prospective Economic Advantage** <br> 3. **Unlawful Conversion Business Assets** <br> 4. **Civil Theft of Property** <br> 5. **Violation of California Unfair Competition Law B&P § 17200** <br> 6. **Horizontal Restraint on Trade (Cartwright Act)** <br> 7. **Unreasonable Restraint on Trade (Cartwright Act)** <br> 8. **Willful Acquisition and Maintenance of a Monopoly (Cartwright Act)** <br> 9. **Willful Attempted Acquisition and Maintenance of a Monopoly (Cartwright Act)** <br> 10. **Unjust Enrichment** |

Plaintiff, U.S. ALLIANCE GROUP INC., alleges as follows.

## PARTIES

1.    Plaintiff U.S. Alliance Group Inc. ("USAG") is, and at all times relevant herein was, a California corporation with its principal place of business in Rancho Santa Margarita, California.

2.    Defendant NCR Corporation ("NCR") is, and at all times relevant herein was, a

EXHIBIT A

Delaware corporation registered to do, and doing business in California, with its principal place of business in Atlanta, Georgia.

3.    USAG is currently unaware of the true names and capacities of Does 1 through 25, inclusive, whether individual, partnership, corporation, unincorporated association, foreign individual or entity, or otherwise, and therefore sues these Doe Defendants by such fictitious names. After discovery, which is necessary to ascertain the true names and capacities of these Doe Defendants, USAG will amend the pleadings to allege the necessary identifying details.

3.    USAG is informed and believes, and based thereon alleges, that at all material times, each of the Doe Defendants was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities, and in doing the things alleged, each was acting within the scope of such agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others.

4.    USAG is further informed and believes, and based thereon alleges, that at all times relevant hereto, NCR and Does 1 through 25, acted for each other in connection with the conduct hereinafter alleged, and that each of them performed the acts complained of herein, or breached the duties herein complained of, as agents of each other, and each is therefore fully liable for the acts of the other.

5.    Other persons and corporations not yet made defendants in this Complaint, of whom USAG is unaware of their true names, include NCR senior corporate executives and managing agents, who knowingly aided and abetted and participated as co-conspirators in the violations alleged and performed the acts and made the statements in furtherance of the violations alleged.

## JURISDICTION, VENUE, AND APPLICABLE LAW

6.    USAG's primary place of business is in Orange County, California, and there is no agreement between USAG and NCR.  Further, a substantial portion of the pertinent events occurred in Orange County, California.  USAG is informed and believes, and based thereon alleges, that NCR directed its actions to Orange County, California, where USAG suffered damages.  Also, USAG's actions arise under California's laws, and therefore California law applies.  Also, NCR maintains

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

**EXHIBIT A**

1  corporate offices in California.

2  **FACTUAL BACKGROUND**

3      7.    This suit involves competitors in the industry of electronic payment processing, ATM

4  credit/debit card and ATM-cryptocurrency transactions and merchant services.

5      8.    USAG is a leading national credit/debit card processor for merchants and provides

6  cutting-edge electronic payment processing solutions for businesses.  USAG offers customers ATM

7  machines, credit/debit card payment processing, ACH, Bitcoin (cryptocurrency,) and cash advance

8  processing services.

9      9.    NCR is a leading global merchant services provider in the banking, retail and

10  hospitality industries providing end-to-end management of the ATM self-service experience

11  including hardware, software, and technology services.  NCR has 38,000 employees world-wide and

12  manages an extensive customer base in established high growth global markets.  NCR owns and

13  operates approximately 100,000 ATM machines in the USA.

14      10.    Cardtronics is a leading ATM software system provider operating approximately

15  285,000 ATMs across four continents, approximately 200,000 ATMS in the USA, and a global leader

16  in ATM management systems.

17      11.    LibertyX, today, is a leading "Digital Coin" cryptocurrency provider offering

18  complete digital currency solutions to merchants, including the ability to buy and sell cryptocurrency,

19  conduct cross-border remittance and accept digital currency payments across digital and physical

20  channels, primarily via ATM machines.  With USAG, LibertyX operated approximately 28,000

21  ATM machines that offered BitCoin transactions

22      12.    In the USA, there are approximately 450,000 ATM machines, NCR and its now

23  wholly owned subsidiary Cardtronics, own 2/3 of the ATM machines in the USA, with the remaining

24  1/3 owned by private operators or banks.

25      13.    USAG is informed and believes, and based thereon alleges, that NCR knowingly

26  orchestrated a scheme to undercut and destroy USAG's contractual relationships with Cardtronics

27  and LibertyX, which tortious interference, anticompetitive and unfair business practices directly

28  resulted in the diminution in value of USAG's assets, decline in its market capitalization, and other

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

**EXHIBIT A**

1  vested interests USAG had with LibertyX in the "Digital Coin" ATM-cryptocurrency market.

2        14.     Purchasing cryptocurrency generally requires that an individual consumer register
3  through an app and undergo vigorous underwriting requirements, linking bank accounts, and often
4  times wait times.   Some states restrict certain apps, and many apps do not contain certain
5  cryptocurrencies.

6        15.     Cryptocurrency ATMs, like those operated and by Defendants, however, allow for
7  instantaneous transactions without the cumbersome and time consuming constraints of using apps.
8  By cornering the cryptocurrency ATM market, Defendants have stronghold on an otherwise unserved
9  market.

10       16.     Typical ATM transactions require multiple payments providers, like USAG.  But the
11 acts contemplated below, and due to NCR and Cardtronics existing market share allowed Defendants
12 to control the entire cryptocurrency ATM market.

13 **USAG's Agreement with Cardtronics**

14       17.     On September 30, 2008, USAG and Cardtronics entered into an "Agreement for
15 Processing Services" ("Agreement") which contractual relationship continued for over twelve (12)
16 years.  After the initial four-year term, the Agreement automatically renewed for successive one-year
17 terms.

18       18.     Under the Agreement, either party could terminate by giving "the other at least 180
19 days prior written notice of its intent to terminate [the] Agreement at the end of the Initial Term or
20 any Renewal Term."  (Ex. 1, p. 4, par. 6.1.)

21       19.     Under the Agreement, USAG would refer merchant locations, from its proprietary
22 merchant portfolio, to Cardtronics for ATM processing services.  The combination of USAG's and
23 Cardtronics' services allowed for the ATM machine to dispense cash, retrieve funds from the
24 cardholder's bank, pay the ATM owner-merchant a percentage of the fees, and thereby complete the
25 full ATM transaction.

26       20.     Specifically, Cardtronics would provide the frontend processing services which
27 included the software necessary to settle the end-user, or consumer, ATM transaction.

28       21.     USAG would provide the ATM merchant-owner with the backend processing

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

COMPLAINT FOR DAMAGES

EXHIBIT A

services by processing the transactions between the ATM machine and the bank, and then providing the ATM merchant-owner a statement reflecting the transaction.

22.     The Agreement in practice functioned by having USAG refer an ATM merchant location to Cardtronics and Cardtronics would assign that merchant location a Terminal Identification Number, TID or software code "Key," that identifies the merchant to the ATM machine they use to process the ATM transactions.  The TID, or Key, specifies each ATM payment terminal a merchant business uses.

23.     USAG would then program the "Keys" into the ATM, which would allow the ATM to go live and fully process the end-user consumer ATM transactions.

24.     USAG used its confidential login information to enter its proprietary merchant information related to the transaction into Cardtronics' customer relationship management software ("CRM".)  Cardtronics would then charge USAG a transaction fee for each consumer transaction on the ATM machine.

### USAG's Agreement with LibertyX

25.     In July 2017, USAG entered into a Merchant Processing Agreement to provide ATM merchant and payment processing services to a new cryptocurrency group LibertyX.

26.     Under this Agreement, LibertyX granted USAG the "exclusive" right to manage its electronic payment processing; USAG was the "exclusive processing agent" for LibertyX.  (Ex. 2, p. 7, par. 1.1.)

27.     That same month, in July 2017, USAG began providing Cardtronics with its proprietary merchant accounts for LibertyX Crypto-Merchants.

28.     As was customary under its Agreement with Cardtronics, for each new LibertyX account submitted, Cardtronics would assign USAG the software code "Keys" for the Crypto-Merchant account.  USAG would enter that information in Cardtronics' CRM software system after which Cardtronics would then charge USAG a transaction fee for each consumer transaction on the Crypto-ATM machine.

29.     By January 2021, USAG had multiple agreements with LibertyX which included agreements granting USAG the right as the exclusive provider for LibertyX; granting USAG a 5%

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

in LibertyX; and agreements for USAG to provide equipment, processing services, and advisor services to LibertyX.

30.     USAG was single-handedly responsible for, and developed, LibertyX's "Digital Coin" cryptocurrency business to 28,484 Crypto-ATM merchant locations, established its market presence, and facilitated the payment processing technology for LibertyX digital coin currency transactions.

31.     After 12 years under contract with USAG, on March 15, 2021, Cardtronics suddenly stopped performing its contractual service obligations for payment processing in breach of its Agreement with USAG, did not provide any notice of its intent terminate the Agreement, and stopped sending USAG reporting on all 28,484 "Keys" for LibertyX's Crypto-ATM merchants.

32.     Two days later, on March 17, 2021, USAG then received notice from LibertyX terminating some of its payment processing agreements.

**NCR's Anticompetitive and Unfair Business Practices**

33.     USAG is informed and believes, and thereon alleges, that on or about January 2021, NCR promulgated strategic growth initiatives to transform and expand its ATM electronic payments division, transform its merchant services into a software platform, and dominate and form a monopoly over the emerging cryptocurrency ATM market in the USA.

34.     Cardtronics and LibertyX were the ideal match for NCR to transform and expand its electronic payments software platform and enter the ATM cryptocurrency market.

35.     On or about January 25, 2021, NCR and Cardtronics entered into an acquisition agreement for an all-stock purchase valued at $2.5 billion to become the largest ATM company in the world.  As reported, the boards of directors for both companies signed-off on the acquisition. SEE   *Yahoo!*News,     MarketWatch    |    http://news.yahoo.com/ncr-acquires-cardtronics-2-5b-143410904.html.

36.     *Yahoo!*News further reported that, before the acquisition, Cardtronics was reportedly the world's largest non-bank operator and payments processing software provider; and NCR President and CEO, Michael Hayford, publicly acknowledged "that Cardtronics, with its more than 285,000 ATMS in 10 countries would expand his company's NCR-as-a-service strategy – a plan to

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

EXHIBIT A

1  service and secure existing [ATM] machines on a subscription basis." *Ibid*.

2      37.    Neither NCR nor Cardtronics provided USAG with prior notice of its pending

3  acquisition agreement or that Cardtronics had the intent to effectively terminate its Agreement with

4  USAG by undercutting USAG and stealing USAG and Cardtronics' mutual customer.

5      38.    USAG is informed and believes, and based thereon alleges, that as a result of the NCR

6  acquisition and exclusive dealings, NCR and Cardtronics targeted USAG, discussed the USAG

7  Agreements, and crafted a plan to overtake USAG's business in the crypto-ATM space; and further

8  for Cardtronics leverage its relationship with LibertyX and eliminate USAG's interest in LibertyX.

9      39.    USAG is informed and believes, and is expected to have evidentiary support after a

10  reasonable opportunity for further investigation and discovery, that in January 2021 NCR and

11  Cardtronics actively conspired to undercut and destroy USAG's contractual relationships with

12  LibertyX, to exclude USAG, for LibertyX to process its cryptocurrency transactions directly with

13  NCR/Cardtronics, and to gain a monopoly over the crypto-ATM business.

14      40.    The unlawful scheme first culminated with NCR directing Cardtronics' instant

15  porting of all 28,484 USAG cryptocurrency merchants, from USAG's proprietary merchant

16  portfolio, into a direct processing relationship with LibertyX and Cardtronics.

17      41.    To further carry out the scheme, NCR directed Cardtronics to provide LibertyX with

18  access to all of USAG's Confidential Information specifically for the purpose of enabling LibertyX

19  to process payments direct with Cardtronics and/or to unlawfully convert and misappropriate all of

20  USAG's proprietary cryptocurrency merchants to NCR.

21      42.    USAG is informed and believes, and is expected to have evidentiary support after a

22  reasonable opportunity for further investigation and discovery, that NCR knowingly aided and

23  abetted and conspired with Cardtronics in exclusive dealings to divide markets, ATM products and

24  electronic payment processing services, including ATM-cryptocurrency transactions, merchants

25  and/or territories among NCR and its wholly owned subsidiary Cardtronics in the USA.

26      43.    NCR furnished the means to perpetrate this anticompetitive coup d'état, which unfair

27  business practices, and acts taken in restraint on trade, directly resulted in the diminution in value of

28  USAG's assets, decline in its market capitalization, and other vested interests in the ATM-

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

**EXHIBIT A**

cryptocurrency market.

44.     On June 21, 2021, NCR completed its acquisition of Cardtronics in a deal valued at $2.5 billion.   *Ibid.*, *Yahoo!*News, MarketWatch, ¶33. As part of that transaction, NCR paid Cardtronics' $32.6 Million cancellation fee related to its pending purchase with another suitor.

45.     USAG is informed and believes and thereon alleges that this valuation was based on eliminating USAG's interests in LibertyX and the subsequent acquisition of LibertyX agnostic of USAG.

46.     On August 2, 2021, NCR announced its agreement for acquisition of LibertyX in an all-stock purchase deal valued at $73,000,000. NCR completed this acquisition on January 13, 2022. SEE ncr.com | http://www.ncr.com/news/newsroom/news-releases/company/ncr-completes-acquisition-of-cryptocurrency-leader-libertyx.

47.     USAG is informed and believes and thereon alleges that this valuation was based on eliminating USAG's interests in LibertyX and the subsequent acquisition of LibertyX agnostic of USAG.

48.     NCR Executive Vice President & President, Don Layden, in the Payments & Network Division, touted LibertyX as "a leading cryptocurrency software provider" and "a strong strategic fit for NCR because it accelerates NCR's ability to rapidly deliver a complete digital current solution to [NCR] customers, including the ability to buy and sell cryptocurrency … and accept digital currency payments across digital and physical channels." *Ibid*.

49.     "Accellerate" is an interesting choice of words because USAG is informed and believes and thereon alleges that prior to the tiered purchases of Cardtronics and LibertyX, NCR had no foothold in the crypto-ATM business.

50.     NCR's Don Layden further opined that "[t]he LibertyX digital currency solution runs on ATMs, kiosks and point-of-sale (POS) systems today.  LibertyX partners with ATM operators, like NCR's Cardtronics, who owns and manages ATMS and the Allpoint network in the U.S. at locations like convenience stores, pharmacies, and supermarkets." *Ibid*.

51.     This comment reflects NCR's deep understanding of LibertyX's contractual relationships, including its agreements with USAG.

EXHIBIT A

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

52.     USAG is informed and believes and thereon alleges that one of the main reasons that NCR tiered the purchase of Cardtronics and LibertyX was to obfuscate its anti-competitive acts and tortious interference with USAG's agreements with LibertyX and Cardtronics thereby diluting its apparent liability and shifting some of the responsibility to Cardtronics.

53.     NCR's conspiratorial scheme deliberately undercut USAG's contractual 5% interest in LibertyX and its vested business interests with LibertyX in the ATM-cryptocurrency market and, as a direct result thereof, USAG suffered actual injury.

54.     Indeed, NCR's 2021 fourth quarter earnings, as reported, "[NCR] reported revenues of $2.03 billion, outpacing the consensus mark of $2.01 billion ... [D]riven by contributions from the Cardtronics business, and solid growth across the company's banking and hospitality segments. NCR progressed significantly with its strategic growth initiatives, which are transforming it into a software platform and payments company.  The company's recurring revenues improved 35% to $1.18 billion in the [fourth] quarter under review."  *Yahoo!*finance, Zack's Equity Research (February 9, 2022) http://finance.yahoo.com/news/ncr-corporation-ncr-q4-earnings-171005939 .html.

55.     Further, NCR's unfair business practices were also anticompetitive because NCR was able to purchase, subsidize, and pay massive termination fees on behalf of Cardtronics, e.g. $32,600,000, under another purchase agreement Cardtronics was entertaining with NCR's global monopoly-driven profits that NCR knew were unavailable to its competitors like USAG.

56.     USAG is informed and believes, and is expected to have evidentiary support after a reasonable opportunity for further investigation and discovery, one or more of NCR officers, directors and/or managing agents, actively participated and orchestrated, knowingly authorized and/or ratified, the above stated breaches, anticompetitive business practices, and deliberate business interference with USAG's exclusive agreements and vested interest in LibertyX, USAG's proprietary ATM cryptocurrency merchants portfolio and established market share all to USAG's financial detriment and injury.

///

///

EXHIBIT A

**FIRST CAUSE OF ACTION**

**Intentional Inference with Prospective Economic Relations**

**(Against Defendant NCR Corporation and DOES 1 – 25, inclusive)**

57.    Plaintiff realleges and incorporates by reference each and every paragraph above as though fully set forth below.

58.    USAG, Cardtronics and LibertyX were in economic relationships that were, and would continue to, result in continuing revenue stream and other economic benefits to USAG, like USAG's 5% vested business interest in LibertyX.

59.    Further, USAG had an "exclusive" Agreement with LibertyX and USAG was the exclusive payment processing agent for LibertyX.

60.    NCR knew, through its underwriting of the purchase of Cardtronics and LibertyX, of USAG's economic relationships with Cardtronics and LibertyX and knew that USAG had an "exclusive" contractual relationship with LibertyX.

61.    As set forth above, NCR knowingly orchestrated a scheme to undercut and destroy USAG's contractual relationships, unlawfully convert the economic relationships for its own financial benefit, and to expand its market power and monopolistic gain to the exclusion and handicap of its competitors; and, further, knew that its disruption of USAG's relationships was certain and/or substantially certain to occur.

62.    NCR deliberately interfered with USAG's prospective economic advantage in that, but for the illicit, anticompetitive, and unlawful acts as alleged herein, USAG would otherwise have continued to earn revenue, a residual income stream; and would have maintained its market share and vested business interests, and been able to continue business and develop its market share and business relationships with other third parties.

63.    As a direct result of NCR's tortious interference, USAG's economic relationships were disrupted and USAG was harmed, suffered injury and damages in an amount currently unknown but subject to proof at the time of trial.

56.    NCR's unlawful acts were reprehensible and despicable and carried on intentionally and willfully in conscious disregard of and with the intent to deprive USAG of money, property and

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

legal rights and otherwise cause USAG injury, such as to constitute malice, oppression and fraud, entitling USAG to punitive damages in an amount appropriate to punish or set an example of NCR.

**SECOND CAUSE OF ACTION**

**Negligent Interference with Prospective Economic Relations**

**(Against Defendant NCR Corporation and DOES 1 – 25, inclusive)**

57.    USAG realleges and incorporates by reference each and every paragraph above as though fully set forth below.

58.    USAG, Cardtronics and LibertyX were in economic relationships that did, and would continue, to result in a continuing revenue stream and other economic benefits to USAG, like USAG's 5% vested business interest in LibertyX.

59.    Further, USAG had an "exclusive" Agreement with LibertyX and USAG was the exclusive payment processing agent for LibertyX.

60.    NCR knew or should have known that these business relationships would be disrupted if NCR failed to act with reasonable care.

61.    NCR failed to act with reasonable care by engaging in wrongful conduct to substantially interfere with, undercut and destroy USAG's contractual relationships; and unlawfully convert the economic relationships for its own financial benefit, and to expand its market power and monopolistic gain to the exclusion and handicap of its competitors; and, further, knew that its disruption of USAG's relationships was certain and/or substantially certain to occur.

62.    As a direct result of NCR's tortious interference, USAG's economic relationships were disrupted and USAG was harmed, suffered injury and damages in an amount currently unknown but subject to proof at the time of trial.

63.    NCR's unlawful acts were reprehensible and despicable and carried on intentionally and willfully in conscious disregard of and with the intent to deprive USAG of money, property and legal rights and otherwise cause USAG injury, such as to constitute malice, oppression and fraud, entitling USAG to punitive damages in an amount appropriate to punish or set an example of NCR.

///

///

EXHIBIT A

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

**THIRD CAUSE OF ACTION**

**Unlawful Conversion Business Assets**

**(Against Defendant NCR Corporation and DOES 1 – 25, inclusive)**

63.     USAG realleges and incorporates by reference each and every paragraph above as though fully set forth below.

64.     USAG owned, possessed, and had a right to possess its business assets; and, more specifically, USAG's vested business interest in LibertyX, its exclusive LibertyX Agreements, the revenues generated from its contractual relationships, and USAG's proprietary merchant cryptocurrency portfolio to and including its proprietary pricing information and ATM merchant accounts.

65.     NCR substantially interfered with USAG's exclusive Merchant Processing Agreements with LibertyX, by substantially interfering with its contractual relationship; and by intentionally and unlawfully exercising wrongful control over, and taking possession of, all 28,484 LibertyX Crypto-Merchants from USAG, converted all 28,484 Crypto-Merchants into a direct relationship with Cardtronics, and further conspired to prevent USAG from having access to the proprietary periodic reports for LibertyX Crypto-ATM transactions.

66.     As set forth above, NCR tortious interference with USAG's business assets undercut and destroyed USAG's contractual relationship with LibertyX, to and including USAG's 5% interest in LibertyX.

67.     As set forth above, USAG demanded that Cardtronics stop interfering and restore the merchant accounts and services unlawfully taken from USAG, which breaches and interference Cardtronics denied, intentionally concealing from USAG its scheme with NCR to leverage LibertyX in its exclusive dealings with NCR.

68.     USAG did not consent to NCR's unlawful interference with USAG's exclusive Agreements and contractual relationships.

69.     As set forth above, NCR's unlawful conduct, and anticompetitive scheme to usurp USAG's business assets and market share for its own economic, financial, and market gain, was a direct and substantial factor that caused USAG harm.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

70.     As a direct and proximate result of NCR's unlawful interference, USAG has suffered monetary damages in an amount currently unknown but subject to proof at the time of trial plus interest thereon at the maximum legal rate.

71.     NCR's unlawful acts were reprehensible and despicable and carried on intentionally and willfully in conscious disregard of, and with the intent to deprive, USAG of money, property and legal rights and otherwise cause USAG injury, such as to constitute malice, oppression and fraud entitling USAG to punitive damages in an amount appropriate to punish or set an example of NCR.

**FOURTH CAUSE OF ACTION**

**Civil Theft of Property**

**(Against Defendant NCR Corporation and DOES 1 – 25, inclusive)**

72.     USAG realleges and incorporates by reference each and every paragraph above as though fully set forth below.

73.      Every person who feloniously steals or takes the personal property of another; or fraudulently misappropriates the property entrusted to him or her; or knowingly and designedly, by false or fraudulent representation or pretense, defrauds any other person of money, labor or personal property, and thereby obtains credit and/or fraudulently gets or obtains possession of money, or property, or obtains the labor or service of another, is guilty of theft.  Penal Code §484(a).

74.      Any person who has been injured by way of such theft may bring a civil action for three times the amount of actual damages sustained (treble damages), for costs of suit and reasonable attorney's fees.  Penal Code §496(c).

75.     As set forth above, in January 2021, NCR intended to deprive, unlawfully convert, and misappropriate from USAG its business assets and, more specifically, USAG's vested business interest in LibertyX, its exclusive LibertyX Agreements, the revenues generated from its contractual relationships; and USAG's proprietary merchant cryptocurrency portfolio to and including its proprietary pricing information and ATM merchant accounts.

76.     As set forth above, USAG, upon information and belief, and based thereon alleges, that NCR conspired with Cardtronics, and actively concealed from USAG its acquisition agreement

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

13

1  with Cardtronics and exclusive dealings with Cardtronics, to stop doing business with USAG,

2  leverage its relationship with LibertyX; exclude and handicap USAG, and other competitors, for its

3  own economic and financial gain and to expand its market power and monopolistic dominance in the

4  industry.

5        77.    USAG suffered monetary damages and losses as direct result of NCR's acts of theft

6  by intentionally interfering with, unlawfully converting and misappropriating, USAG's business

7  asserts which unlawful conduct permanently deprived USAG of its property.

8        78.    As a direct result of NCR's unlawful conduct, NCR is liable to USAG for the actual

9  damages suffered, for treble damages (three times the amount of actual damages,) costs of suit, and

10  reasonable attorney's fees.  Penal Code §496(c).

11        79.    NCR's unlawful acts were reprehensible and despicable and carried on intentionally

12  and willfully in conscious disregard of and with the intent to deprive USAG of money, property and

13  legal rights and otherwise cause USAG injury, such as to constitute malice, oppression and fraud,

14  entitling USAG to punitive damages in an amount appropriate to punish or set an example of NCR.

15  **FIFTH CAUSE OF ACTION**

16  **Violation of the California Unfair Competition Law**

17  **(Cal. Business and Professions Code § 17200, et seq.)**

18  **(Against Defendant NCR Corporation and DOES 1 – 25, inclusive)**

19        80.    USAG hereby repeats and incorporates by reference each paragraph herein as if fully

20  stated herein.

21        81.    The California Unfair Competition Law is to protect competitors by promoting fair

22  competition in commercial markets for goods and services.

23        82.    As set forth above, NCR engaged in per se unfair and deceptive acts and business

24  practices by orchestrating a scheme, and in actively conspiring with Cardtronics, to stop doing

25  business with USAG, and undercut and destroy USAG's contractual relationships with its merchant

26  ATM accounts and customers and, specifically, USAG's exclusive business relationship with

27  LibertyX and competitive presence in the ATM cryptocurrency market.

28        83.    NCR's deceptive acts and practices injured USAG.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

EXHIBIT A

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

84.    A causal link exists between NCR's deceptive acts, unfair and unlawful practices, and USAG's resulting injury.

85.    Further, as set forth above, NCR unlawfully converted, intended to deprive and fraudulently misappropriate from USAG its business assets and, more specifically, USAG's vested business interest in LibertyX, its exclusive LibertyX Agreements, the revenues generated from its contractual relationship with LibertyX; and USAG's proprietary merchant cryptocurrency portfolio to and including its proprietary pricing information and ATM merchant accounts.

86.    NCR's unlawful conduct violates California's Unfair Competition Law because NCR's tortious interference proximately caused USAG actual injury, substantial monetary damage, lost business opportunity, and deprived USAG of the prospective economic benefit of its agreements.

87.    As set forth above, NCR has significant market power globally, furnished the means necessary to perpetrate the anticompetitive practices, and acted without a legitimate business justification in its refusal to deal with USAG, its competitor.

88.    NCR's unlawful practices also violate the Unfair Competition Law, because such acts offend public policy; are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious to consumers and competitors alike; and, upon information and belief, caused substantial harm, including artificially inflated prices and injury to competitors, which consequence greatly outweighs any possible legitimate business reason or justification.

89.    As a direct result of NCR's unfair and unlawful acts, USAG lost money, business assets, decline in market capitalization, and other vested interests in the ATM cryptocurrency market.

90.    USAG seeks, and is entitled to recover, injunctive relief, restitution, and disgorgement of profits.

## SIXTH CAUSE OF ACTION

**Horizontal Restraints-Allocation of Trade or Commerce in violation of the Cartwright Act,**

**(Cal. Cal. Business and Professions Code  §§16720, et seq.)**

**(Against Defendant NCR Corporation and DOES 1 – 25, inclusive)**

91.    USAG hereby repeats and incorporates by reference each paragraph herein as if fully stated herein.

15

EXHIBIT A

92.     The NCRs agreements to purchase Cardtronics and LibertyX represent horizontal agreements entered into between NCR, LibertyX, and Cardtronics all of whom are competitors or potential competitors in the market for crypto-ATMs.

93.     Each of those acquisition agreements represents an agreement, trust, combination of capital, skill or acts by two or more persons, within the meaning of the Cartwright Act.

94.     Through these acquisitions, NCR has agreed to divide and cut out other ATM servicers and providers from the crypto-ATM space since NCR and Cardtronics own 2/3 of all ATM machines.

95.     By so doing, NCR have conspired to restrain trade in violation of the Cartwright Act. These market allocation agreements are per se illegal under the aforesaid provisions.

96.     The acquisition agreements of Cardtronics and LibertyX are anti-competitive.

97.     NCR has market power in the sale of all crypto-ATM transactions to individuals in California and the USA.

98.     Each of the challenged agreements has had substantial and unreasonable anti-competitive effects in the relevant markets, including but not limited to:

    a. Reducing the number of payments providers competing with NCR throughout California;

    b. Unreasonably limiting the entry of competitor crypto-ATM companies into California;

    c. Allowing Defendants to maintain and enlarge its market power throughout California;

    d. Allowing Defendants to raise the premiums charged to consumers by artificially-inflated, unreasonable, and supra-competitive amounts;

    e. Depriving consumers of choices of purchasing crypto-currency form ATM machines free and open competition.

99.     The pro-competitive benefits, if any, of the market allocation agreements alleged above do not outweigh the anti-competitive effects of those agreements.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

100. The acquisition agreements unreasonably restrain trade in violation of the Cartwright Act.

101. As a direct and proximate result of Defendants continuing violations of the Cartwright Act, USAG has suffered injury and damages in an amount to be proven at trial. These damages consist of having been cut out of highly lucrative agreements and being unable to compete in the crypto-ATM business but for the violations of the Cartwright Act.

102. Under Business and Professions Code §16750(a), USAG seeks treble damages and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### Unreasonable Restraint of Trade in violation of the Cartwright Act

### (Cal. Cal. Business and Professions Code §§16720, et seq.)

### (Against Defendant NCR Corporation and DOES 1 – 25, inclusive)

103. USAG hereby repeats and incorporates by reference each paragraph herein as if fully stated herein.

104. NCR has market power in the sale of crypto-ATMs to individuals and groups in California and the USA.

105. The NCR acquisition agreements with Cardtronics and NCR are unreasonable restraints of trade, the purpose or effect of which is to restrain competition. The agreements substantially lessen the competition and tending to create a monopoly. The acquisition agreements has had substantial and unreasonable anticompetitive effects in the relevant markets, including but not limited to:

a. Allowing NCR to set prices for crypto-ATM transactions since they are the only option for such purchases on an ATM, and the other alternatives require downloading an app and going through vigorous underwriting and wait times, while crypto-ATM transactions can occur in real time;

b. Unreasonably restricting price and cost competition among payments services and technology providers by limiting or preventing access to crypto-ATMs in competition with NCR since NCR and Cardtronics own most of the ATM machines in the county;

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

EXHIBIT A

c. Unreasonably restricting the ability of payment service providers to offer to NCR's competitors or potential competitors reduced prices for services;

d. Depriving consumers of crypto ATM transactions of free and open competition.

106.    NCR's acquisition agreements are a trust, combination of capital, skill or acts by two or more persons, within the meaning of the Cartwright Act, with an anticompetitive effect of the restraint outweighing any beneficial effect on competition as stated above. Such restraint harmed Plaintiff and Defendants' conduct was a substantial factor in causing Plaintiffs harm and harm to the class she represents.

107.    The pro-competitive benefits, if any, of the NCR acquisition agreements do not outweigh the anti-competitive effects of the agreements.

108.    Together, the acquisition agreements with Cardtronics and LibertyX restrains trade in violation of Cartwright Act, §§16720, et seq., of the California Business and Professions Code.

109.    As a direct and proximate result of NCR's continuing violations of the Cartwright Act, USAG has suffered injury and damages in an amount to be proven at trial. These damages consist of having been cut out of highly lucrative agreements and being unable to compete in the crypto-ATM business but for the violations of the Cartwright Act.

110.    Under Business and Professions Code §16750(a), USAG seeks treble damages and attorneys' fees.

**EIGHTH CAUSE OF ACTION**

**Willful Acquisition and Maintenance of a Monopoly in the Relevant Market for**

**Crypto ATM Services**

**(Cal. Cal. Business and Professions Code §§16720, et seq.)**

**(Against Defendant NCR Corporation and DOES 1 – 25, inclusive)**

111.    USAG hereby repeats and incorporates by reference each paragraph herein as if fully stated herein.

112.    NCR has monopoly power in the full-service crypto-ATMs market in California. This monopoly power is evidenced by, among other things:

a. NCR's ability, upon information and belief, to set the prices for crypto-ATM transactions,

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

control prices, and exclude competitors like USAG;

b. NCR's high market share of the crypto-ATMs market, including its increasing market share.

c. NCR has abused and continues to abuse its monopoly power in order to maintain and enhance its market dominance by unreasonably restraining trade, thus artificially inflating the rates and fees that it charges to consumers.

113.    NCR's conduct constitutes unlawful monopolization and is unlawful anti-competitive conduct in the relevant markets in violation of the §16727 of the Cartwright Act.

114.    As a direct and proximate result of NCR's continuing violations of the Cartwright Act, USAG has suffered injury and damages in an amount to be proven at trial. These damages consist of having been cut out of highly lucrative agreements and being unable to compete in the crypto-ATM business but for the violations of the Cartwright Act.

115.    Under Business and Professions Code §16750(a), USAG seeks treble damages and attorneys' fees.

### NINTH CAUSE OF ACTION

### Willful Attempted Acquisition and Maintenance of a Monopoly in the Relevant Market for Crypto ATM Services

### (Cal. Cal. Business and Professions Code §§16727)

### (Against Defendant NCR Corporation and DOES 1 – 25, inclusive)

116.    USAG hereby repeats and incorporates by reference each paragraph herein as if fully stated herein.

117.    NCR has acted with the specific intent to monopolize the relevant markets.

118.    There was and is a dangerous possibility that NCR will succeed in their attempt to monopolize the relevant markets because NCR already controls a large percentage of those markets. Further success by NCR in excluding competitors from those markets is an attempt to monopolize, or attempt to combine or conspire to monopolize, will confer a monopoly for NCR in violation of §16727 of the Cartwright Act.

119.    NCR's attempted monopolization of the relevant markets has harmed competition in

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

EXHIBIT A

1  those markets and has caused injury to USAG. USAG is unable to compete and consumers are injured

2  by paying higher fees.

3       120.    USAG has been damaged as the result of NCR's attempted monopolization of the

4  relevant markets and seek treble damages.

5  **TENTH CAUSE OF ACTION**

6  **(Unjust Enrichment)**

7       121.    USAG hereby repeats and incorporates by reference each paragraph herein as if fully

8  stated herein.

9       122.    NCR has benefitted from its unlawful acts through the overpayments for Crypto

10  Transactions and by capturing almost all of the ATM market of which other payment processing

11  providers previously were able to compete.

12       123.    It would be inequitable for NCR to retain the benefit of these overpayments and

13  transaction fees that were taken from USAG and retained by Defendants.

14       124.    By reason of its unlawful conduct, NCR must make restitution to USAG.

15       125.    Further, any action which might have been taken by USAG to pursue administrative

16  remedies would have been futile. In equity, NCR cannot retain the economic benefits derived from

17  their improper conduct and should be ordered to pay restitution and prejudgment interest to USAG.

18  **PRAYER FOR RELIEF**

19      WHEREFORE, Plaintiff U.S. Alliance Group, Inc. prays for relief against Defendant NCR

20  Corporation, and DOES 1 – 25, jointly and severally, as follows:

21      1.    For full restitution and/or disgorgement of all revenues, earnings, profits,

22  compensation, and benefits that may have been obtained by Defendants as a result of their unfair

23  business acts or practices, breach of contract and other violations of law;

24      2.    For a prohibitory injunction requiring Defendants to cease and desist from engaging

25  in unlawful business practices, and for a mandatory injunction requiring the immediate return of all

26  of USAG's property;

27      3.    For compensatory damages in excess of $13,000,000, and interest thereon, in an

28  amount according to proof at trial;

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

**EXHIBIT A**

1    4.    For prejudgment interest at the maximum legal rate;

2    5.    For treble damages as provided for by law;

3    6.    For punitive damages as provided for by law;

4    7.    For attorney's fees and costs as provided for by law; and

5    8.    For such other and further relief as the Court may deem proper.

6

7    Dated: April 1, 2022                          GLOBAL LEGAL LAW FIRM

8

9                                          By: _____

10                                              James C. Huber
                                                Attorneys for Plaintiff
11                                              U.S. Alliance Group, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CA 92075
(888) 846-8901

COMPLAINT FOR DAMAGES

**EXHIBIT A**